**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| **THOMAS LAWLER**,<br>*Plaintiff,*<br>v.<br>**BETTER TAX RELIEF LLC and BETTER COMPANIES LLC,**<br>*Defendants.* | Case No.:<br>**COMPLAINT**<br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff Thomas Lawler ("Lawler" or "Plaintiff") files this Complaint against Defendants Better Tax Relief, LLC ("Better Tax") and Better Companies, LLC ("Better Companies", collectively "Defendants"). In support thereof, Plaintiff states as follows:

### NATURE OF THE CASE

1. Plaintiff seeks damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendants. Defendants violated Plaintiff's rights by making two or more solicitation calls to residential subscribers whose numbers were registered on the Do Not Call Registry, and by placing ringless, pre-recorded voicemails to consumers without their prior express consent. Those acts and omissions, which are described at length herein, were in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. and the TCPA's corresponding regulations promulgated by the Federal Communications Commission ("FCC") at 47 C.F.R. § 64.1200 *et seq.*

## BACKGROUND ON THE TCPA

2. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights – specifically, the right to be left alone from unwanted telemarketing calls.

3. A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) et seq., affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

5. Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

6. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 30 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

7. The TCPA also provides protections for persons who receive prerecorded or artificial voice calls without the caller (or the company acting on the caller's behalf) first obtaining

the recipient's prior express written consent to receive such calls. *See* 47 U.S.C. § 227(b)(1); 47 C.F.R. §§ 64.1200(a)(3), (f)(9). The penalty for violating these provisions is $500 per call and up to $1,500 per call placed in willful violation of the TCPA. 47 U.S.C. § 227(b)(3).

8. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the Federal Communications Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

9. In fact, in 2021 alone, there were over five million complaints from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 5, 2022), https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

10. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, The Wall Street Journal, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**JURISDICTION AND VENUE**

11. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising

under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

12. Plaintiff received the unwanted telemarketing calls at issue in this lawsuit while physically present in Colorado, the state in which he resides.

13. Accordingly, Defendants knowingly and purposefully availed themselves to the State of Colorado by calling Plaintiff's "720" phone number, which is associated with the State of Colorado.

14. Furthermore, Defendants placed several calls from Colorado phone numbers, including but not limited to (303) 813-5328; (720) 768-9400; and (720) 248-5253.

15. Therefore, Defendants placed many of the telemarketing calls from Colorado.

16. A substantial part of the events and omissions giving rise to this claim occurred within this District.

17. Accordingly, personal jurisdiction exists and venue is proper under 28 U.S.C. § 1391(b)(2).

**PARTIES**

18. Plaintiff Thomas Lawler is an individual who resides in Colorado.

19. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

20. Defendant Better Tax Relief LLC is a California company with its principal office address at 2525 Main Street #500, Irvine, California 92614.

21. Defendant Better Companies LLC is a California company with its principal office address at 2525 Main Street #500, Irvine, California 92614.

22. Upon information and belief, Better Tax is a wholly-owned subsidiary of Better Companies. Better Companies and Better Tax Relief have common employees, officers and directors and have registered the same address with the California Secretary of State. The companies worked in concert as a joint enterprise and their business operations overlap without distinction.

23. Defendants are each a "person" as that term is defined by 47 U.S.C. §153(39).

24. Defendants acted through their employees, agents, vendors, contractors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees and representatives.

**FACTUAL ALLEGATIONS**

25. At all times relevant hereto, Plaintiff owned a cell phone, the number for which was (720) XXX-1061.

26. At all times relevant hereto, Plaintiff used that number primarily for personal and residential purposes, such as speaking with friends and family.

27. That cell phone number has been registered on the National Do Not Call Registry since May 31, 2008.

28. Plaintiff acquired the number in March of 2023, and kept it registered it on the National Do Not Call Registry in order to obtain solitude from invasive and irritating telemarketing calls.

29. Beginning in December of 2025, Defendants began a telemarketing campaign to Plaintiff, sending unsolicited and unconsented calls and voicemails promoting Defendants' tax resolution services which Plaintiff did not want or need.

30. On December 27, 2025, Plaintiff received a call from the number (760) 314-3692. He then received a voicemail which stated as follows:

> "Hello there. We received your online tax forgiveness application. The federal government forgives millions in tax to every year. We are calling you to finalize your submission so we can get you access to the hardship relief. Just press one to get connected to our tax experts to finalize your application. Again, just press one to finalize your application and get access to hardship release."

31. On December 27, 2025, Plaintiff received a call from the number (760) 314-3692, which he did not answer. He then received a voicemail which stated as follows:

> "Hello, this is Marissa Lane with the tax liability department. I'm reaching out about your current tax situation based on your file, you may qualify for the 2025 IRS liability reduction program. It's part of a government backed relief effort, aimed at helping families reduce or even eliminate back taxes due to financial hardship. And I think we might be able to get you enrolled into this because your current situation, you can call us back to speak with a tax resolution officer. It could save you thousands. There's still budget left for your state, and the window is open till the end of the year. We'll walk you through next steps, review your eligibility, and help you get access to your resolution portal. You can also call us back at 866-878-0598. I'll be available until 4 PM today and I look forward to speaking with you."

32. Between then and the present date, Plaintiff has received phone calls and pre-recorded voicemails from various phone numbers on over ***two hundred and fifty (250) occasions***.

33. A non-exhaustive list of occasions on which Plaintiff received a voicemail and/or call from Defendants are attached as Exhibit A.

34. On several occasions, Plaintiff answered the calls and requested not to be contacted again. Nevertheless, Defendants continued to call him.

35. On August 13, 2026, in order to identify the party responsible for calling him, Plaintiff answered a call from the number (949) 625-0291 and feigned interest in Defendants' services.

36. Plaintiff was connected with a human agent who asked him a series of questions

regarding his financial history. Plaintiff then inquired into the identity of the company that was responsible for offering the services, to which the agent responded by identifying Better Tax Relief, LLC, located in Irvine, California.

37. After the call concluded, Plaintiff received a text message from the number (949) 989-4830 further identifying Better Tax Relief, LLC, a screenshot of which is attached below:




38. Better Tax Relief, LLC is owned by Better Companies, LLC.

39. Plaintiff was able to tell that the voicemails were pre-recorded due to the impersonal and scripted cadence, tone, and language of the messages. Plaintiff was also able to tell the voicemails were pre-recorded due to the fact that on numerous occasions, Plaintiff received the exact same voicemail, consisting of the same recording with an identical script, voice, and delivery.

40. For instance, on February 12, 2026, Plaintiff received a voicemail from the number (959) 272-8266, which stated:

> Hi, this is Elena Lozano with the special resolution unit. I'm reaching out about a tax matter before your file moves into final collections. Please give me a quick call back when you can. My direct line is 888-919-4623. I've been checking through some files that got flagged before the 2026 IRS deadline. And yours is still showing a few unresolved items, maybe a pass balance or missing returns. With a new relief program rolled out for your state under the current administration, there's still time to see if you qualify for help, especially if you've had any recent financial stress. I'd really like to connect before this gets passed on to collections. From what I'm seeing, there may still be a way we can step in and help. Feel free to call me back at 888-919-4623. I am available 9 to 5 for the rest of the week.

41. Plaintiff received identical voicemails on ten additional occasions on February 13-14, 16, 18-21, 23-24 and 26 of 2026.

42. Even when the voicemails consisted of different recordings, each and every voicemail contained substantially similar language, and followed the same pattern as described above with the same repetitive elements:

(a) An introduction from the purported caller and the party they were purportedly calling for, which always bore a generic fictitious name like "The Resolution Department" or "The Tax Petition and Extension Office";

(b) References to reviewing Plaintiff's alleged "tax file", "tax situation", "balance with the government", etc.;

(c) Offers to assist Plaintiff and/or enroll him in an alleged government tax forgiveness program; and

(d) A callback number, often accompanied by the caller's alleged office hours.

43. Based on the foregoing, as well as the close proximity and sudden high volume of calls, Plaintiff understands Defendants were responsible for all voicemails and calls.

44. These calls and voicemails were not made for "emergency purposes," but rather for solicitation purposes.

45. Plaintiff did not have any pre-existing business relationship with Defendants, and was not interested in tax relief services.

46. Plaintiff did not provide Defendants with his prior express consent to be contacted for solicitation purposes or to receive pre-recorded voicemails.

47. Defendants knew or should have known that their calls were unwanted, as Plaintiff's phone was registered on the National Do-Not-Call Registry.

48. Furthermore, Defendants took measures to prevent their calls from being blocked by calling from several different numbers.

49. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that his privacy had been invaded by Defendants.

**DIRECT AND VICARIOUS LIABILITY**

50. Without the benefit of discovery, Plaintiff understands and therefore alleges Defendants directly placed the calls at issue.

51. However, if some or all of the calls were placed by third-party/parties on behalf of Defendants, in the alternative, Defendants are vicariously liable for those calls.

52. On May 9, 2013, the FCC determined that telemarketers like Defendants cannot avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of

> "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

53. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

54. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

55. If Defendants directly placed the calls at issue to Plaintiff, Defendants are directly liable for the placing of those calls.

56. However, Defendants may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

57. If Defendants did not directly place the calls, Defendants' third-party telemarketers had actual and/or apparent authority to act on behalf of Defendants.

58. Likewise, on information and belief, Defendants also ratified their agents' violations of the TCPA by accepting proceeds from sales initiated by unlawful telemarketing communications.

59. Defendants controlled or had the right to control the marketing activities of those acting on their behalf.

60. Defendants acted as principals to telemarketing agent(s) who were acting on their behalf.

61. Defendants are not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their agents' TCPA violations.

62. For the count identified below, if Defendants directly sent the calls at issue, they are directly liable. Alternatively, to the extent any calls were placed by a third-party agent(s) acting on Defendants' behalf, Defendants are vicariously liable for those unlawful communications.

## COUNT I
## PRERECORDED MESSAGES IN CALLS TO CELL PHONES
## 47 U.S.C. § 227(b)(1)

63. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

64. The TCPA provides, in part that:

> "It shall be unlawful … to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice (…) to any telephone number assigned to a (…) cellular telephone (…)"

47 U.S.C. § 227(b)(1)(A)(iii).

65. Prerecorded voice calls that are placed for solicitation purposes cannot be placed without first obtaining the recipient's "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

66. The term "prior express written consent" means:

> "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called or texted advertisements or telemarketing messages using (…) an artificial or prerecorded voice (…) and the agreement must identify the telephone number to which the

> signatory authorizes such advertisements or telemarketing messages to be delivered."

47 C.F.R. § 64.1200(f)(9).

67. By placing prerecorded voice calls to Plaintiff without having valid "prior express written consent", Defendants violated the TCPA, 47 U.S.C. § 227(b)(1), and the TCPA's corresponding regulations.

68. The penalty for each call placed in violation of the TCPA's restrictions on placing such prerecorded voice calls is $500 and up to $1,500 per call, if the violation is determined to be willful. *See* 47 U.S.C. § 227(b)(3).

69. In addition, the TCPA allows the Court to enjoin Defendants' violations of the TCPA. *See* 47 U.S.C. §§ 227(b)(3)(A).

70. Defendants and/or those acting on their behalf willfully violated the TCPA when placing prerecorded voice calls to Plaintiff's cell phone.

71. Plaintiff is entitled to damages of $500 per violation for each prerecorded voice call placed by Defendants and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendants or those acting on its behalf willfully violated the TCPA.

## COUNT II
## VIOLATION OF NATIONAL DO-NOT-CALL RULES
## 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)

72. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

73. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation

call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii), (e).

74. The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

75. In addition, the TCPA allows the Court to enjoin Defendants' violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5)(A).

76. By calling and leaving voicemails to Plaintiff after their numbers were registered on the National Do Not Call Registry, Defendants violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

77. On information and belief, Defendants and/or their agents routinely make outgoing calls to residential and cellular telephones in the regular course of their telemarketing campaigns alleged above. Defendants violated 47 C.F.R. § 64.1200(c) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff. Defendants violated 47 C.F.R. § 64.1200(c).

78. Defendants' violations were knowing and willful because Defendants knew or should have known that Plaintiff had his number registered on the Do Not Call Registry.

79. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or excuse.

80. Plaintiff is entitled to damages of $500.00 per violation for each call placed by Defendants and up to $1,500.00 per violation if the Court finds Defendants willfully violated the TCPA.

81. Plaintiff seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants to stop their violations of the TCPA.

**PRAYER FOR JUDGMENT**

WHEREFORE, Plaintiff, Thomas Lawler requests the Court grant the following relief against Defendants Better Tax Relief LLC and Better Companies LLC as follows:

a. Enter judgment in favor of Plaintiff for all damages available under the TCPA, including actual and statutory damages per violation of 47 U.S.C. § 227(b)(3)(B) or 227(c)(5)(B), consistent with proof at trial;

b. Enter treble damages in the event violations were knowing or willful, in accordance with 47 U.S.C. § 227(b)(3)(C) and 47 U.S.C. § 227(c)(5)(C);

c. Enter injunctive relief against Defendants; and

d. Award Plaintiff such further and other relief the Court deems just and appropriate.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

KIMMEL & SILVERMAN, PC

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
30 East Butler Ave.
Ambler, Pennsylvania 19002
Telephone: (267) 468-5374
Facsimile: 215-540-8817
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
*Attorneys for Plaintiff*

Dated: October 5, 2026